### BOLTON.

Whether the ballots contained in unsealed envelopes are to be counted as votes—*Quære*.

Whether a separate ballot, found in an envelope, containing a ballot for governor, lieutenant-governor, and senators, but, without any designation of the office for which it was intended, can be counted as a vote for representative—*Quære*.

Whether ballots found in envelopes that have been used, opened, and thrown away, and carried from the meeting, can be counted—*Quære*.

THE election of Edwin A. Whitcomb, returned a member from the town of Bolton, was controverted by Caleb J. Nourse and others, on two grounds, namely, first, that at the annual meeting on the second Monday of November, when the election took place, nine unsealed envelopes were received, which the selectmen refused to count; and, secondly, that the selectmen also neglected to take out of certain other envelopes and count two representative votes for a person other than said Whitcomb. The petitioners alleged, that if the votes contained in the nine rejected envelopes had been counted, there would have been no choice of representative.

It appeared in evidence, at the hearing before the committee on elections, to whom the case was referred, as follows :—

The whole number of votes counted by the selectmen for representative was 215; necessary to a choice, 108; Edwin A. Whitcomb had 110; Richard S. Edes, 89; Samuel W. Kendall, 14; Caleb Nourse and J. E. Sawyer, 1 each. Mr. Whitcomb was declared to be elected, and received a certificate of his election.

[1] 74 J. H. 367.

In counting the votes, the selectmen laid aside and rejected nine unsealed envelopes, which, before a declaration of the votes was made, were afterwards opened and examined by John E. Frye, and found to contain votes, as Mr. Frye testified, for Richard S. Edes, 4; for Samuel W. Kendall, 3; and for Edwin A. Whitcomb, 2. There was some contradictory evidence, as to what Mr. Frye declared to be the contents of the envelopes examined by him, immediately after the examination, but the witness himself adhered to his statement as above.

Thomas Houghton, one of the voters, took home with him from the meeting a number of the envelopes, which had been used, and, on looking them over an hour or two afterwards, found one in which there was a vote for Samuel W. Kendall for representative.

Joseph Sawyer, another of the voters, carried a handful of the used envelopes, after the meeting, to his store, in one of which he found a vote for Kendall for representative. The votes for Kendall were on separate pieces of paper; those for the other candidates were on the ballots for governor, &c.

It appeared, further, that the selectmen rejected the vote of John Stone, which would have been given for Mr. Whitcomb, on the ground, that Stone had ceased to be an inhabitant of Bolton, where he had resided for some years previous. The evidence in regard to the inhabitancy of Stone tended to show, that he had removed his family, and a part of his household furniture from Bolton on the Friday previous to the election; he himself remaining in Bolton to settle up his affairs, and declaring his intention not to remove therefrom until after the election.

It appeared, also, that in one of the envelopes, there was found a vote for governor, together with a vote for Whitcomb, on a separate piece of paper, on which the office was not designated. This vote was not counted.

The committee reported, that, upon the evidence in the case, a majority of them were of opinion, that the member returned did not receive a majority of the votes, and, therefore, was not entitled to a seat as a member.

Three members of the committee, (Messrs. *Schouler, Jones,* and *Bond,*) dissenting from the report, presented their views to the house, in a minority report, containing a statement of the evidence in full, and concluding as follows :—

" The undersigned believe, that the petitioners have failed to make out a case, which would justify the house in unseating the member, and they rely upon the evidence to support their opinion.

There is no doubt in regard to the legality of the meeting on the 10th of November. It was properly held and fairly conducted, from beginning to end, and Mr. Whitcomb was declared to be chosen, and his certificate was given to him by the selectmen.

The petitioners rely upon two facts to vitiate the election and declare the seat vacant. These are, that if the unsealed envelopes had been counted, Mr. Whitcomb would not have had a majority of the votes, and therefore would not have been elected; and they also claim, that the two votes for Mr. Kendall, which were subsequently found by Sawyer and Houghton, ought to have been counted.

As regards the first point, there is a direct conflict of evidence. Mr. Frye, who opened the nine unsealed envelopes, swears positively that they contained four free soil, two democratic, and two whig votes. On the other hand, Capt. Bernard, chairman of the selectmen, who handed the votes to Mr. Frye to open and count, swears as positively that Mr. Frye, immediately after opening and counting them, told him that they contained four votes for Mr. Whitcomb (whig), three for Mr. Edes (free soil), and two for Mr. Kendall (democrat); and that Mr. Frye said, that if counted they would not alter the result. Mr. Frye admits that he repeated in the evening, that the nine votes would not alter the result, but it was under a misapprehension.

The undersigned cannot believe, that the house, for one moment, will sanction or allow the two votes found in the broken envelopes in the evening,—one in a store and the other in a private house,—to be counted. Were such a rule to be estab-

lished, there would be no security against fraud, and no means to guard the ballot-box from the most flagrant abuses. And again, it can be said as an offset, that if all the broken envelopes had been counted, votes might have been found in some of them for Mr. Whitcomb. No assurance can be given, that these two envelopes did not each contain a full vote which was counted; or that the two votes found as above stated, were not either fraudulently or accidentally put in the envelopes, in addition to the two that were subsequently found. Of course the undersigned attribute nothing of the kind to either Mr. Sawyer or Mr. Houghton.

But allowing, for the sake of the argument, that the votes found in the nine envelopes opened by Mr. Frye were as he stated them to be, and that they should have been counted: That would have made the whole number of votes 224; necessary to a choice, 113. Mr. Whitcomb had 112—just one-half. If the selectmen had received the vote of Mr. John Stone, as we believe they ought to have received it, Mr. Whitcomb would have been elected. Again, if the vote having Mr. Whitcomb's name upon it, but which was not counted because the office was not designated on the ballot, had been counted, Mr. Whitcomb would have been elected without the aid of Mr. Stone's vote.

We say, therefore, even upon the hypothesis that the votes found in the nine envelopes were as Mr. Frye testified that they were, Mr. Whitcomb would have been elected. Upon the other hypothesis, to wit, that the votes in the nine envelopes were as Capt. Bernard swears Mr. Frye told him they were, then Mr. Whitcomb would have been elected, even if the two votes for Mr. Kendall, found by Mr. Houghton and Mr. Sawyer, were counted.

The undersigned therefore report, that the petitioners have failed to make out their case, and that they have leave to withdraw their petition, and that Edwin A. Whitcomb is entitled to his seat as a member of this house, from the town of Bolton."

The report was amended by striking out the last paragraph,

and inserting as follows,—" That the petitioners have not made out their case, and have leave to withdraw ;" and, as amended, was agreed to.[1]